Filed 3/11/24  K.M. v. California Office of Administrative Hearings CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| K.M., etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CALIFORNIA OFFICE OF ADMINISTRATIVE HEARINGS,<br><br>    Defendant;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Respondent and Real Party in Interest. | B316970<br><br>Los Angeles County Super. Ct. No. 20STCP04127<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>**[There is no change in judgment]** |

        IT IS ORDERED that the opinion filed in the above-captioned matter on February 13, 2024, be modified as follows:

        On page 25, the last sentence of the first full paragraph, which reads, "(Ed. Code, § 56501, italics added.)" is deleted and replaced with "(Cal. Code Regs., tit. 2, § 60550, subd. (a).)"

There is no change in judgment.

Appellant's petition for rehearing is denied.

_____

RUBIN, J.[1]             BAKER, Acting P. J.         KIM J.

_____

[*]     Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/13/24  K.M. v. California Office of Administrative Hearings CA2/5
(unmodified opinion)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| K.M., etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CALIFORNIA OFFICE OF ADMINISTRATIVE HEARINGS,<br><br>    Defendant;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Respondent and Real Party in Interest. | B316970<br><br>Los Angeles County<br>Super. Ct. No. 20STCP04127 |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Disability Rights Legal Center, Christopher H. Knauf, Alexandra M. Robertson; Gibson, Dunn & Crutcher, Julian W. Poon, Samuel E. Eckman and Hannah Yim for Plaintiffs and Appellants.

Office of the County Counsel, Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Respondent and Real Party in Interest.

---

## *INTRODUCTION*

We are presented in this case with troubling allegations of repeated failures to educate a child in government care. Appellant K.M. became a dependent of the court when she was an infant. When she was eight, the juvenile court concluded she was not adoptable and ordered respondent Los Angeles Department of Children and Family Services (DCFS) to permanently place her into foster care. Between 2017 and 2020, DCFS shuttled appellant among more than a dozen schools in nine school districts, without notifying any of them that appellant had special educational needs. She is now 20—but she reads at a first-grade level.

Appellant commenced formal legal proceedings against several governmental entities by filing an administrative complaint under the Individuals with Disabilities Education Act's administrative hearing process. Proceedings then moved to the trial court by way of a petition for administrative mandamus. Now the matter is before this court.

Although the harm to K.M. is grievous, the legal issue before us is narrow: Putting aside obligations the law imposes on other governmental entities—obligations not presently before us—does DCFS's failure to notify the schools of appellant's special needs fall within the jurisdiction of the federal

2

Individuals with Disabilities Education Act's administrative hearing process? We agree with the trial court that under the circumstances of this case, DCFS is not subject to the Act's administrative process. Therefore, we affirm.[1]

## BACKGROUND

The record before us contains scant information about appellant's educational and dependency experiences before 2017, and only limited information about what occurred afterwards, but we have been able to garner the following.

### 1. *Dependency Proceedings*

Appellant is the fifth of eight siblings. The juvenile court first assumed jurisdiction over appellant and removed her from the care of her parents in February 2004, when she was five months old.[2] Over the next six years, the court repeatedly assumed jurisdiction over appellant and her seven siblings, often removing them from their home.[3] In 2010, a month before

---

[1] Our holding is narrow. We conclude DCFS is not subject to the administrative hearing process over the present claim that it failed to provide statutory notice. We do not address whether jurisdiction may exist in other contexts.

[2] Appellant's parents are not parties to this appeal and were not involved in the underlying administrative hearing. The 2004 dependency petition was based on domestic violence, inappropriate physical discipline, and the father's criminal history, which included convictions for rape, child abuse, sexual assault, and sexual abuse.

[3] After appellant was first taken from her parents, she returned home in March 2006, but was removed again three months later, when the court assumed jurisdiction over the

appellant's seventh birthday, DCFS filed a supplemental dependency petition on her behalf. The petition alleged that appellant had mental and emotional problems; her mother had a limited ability to provide her with ongoing care and supervision; and her mother had requested appellant's removal. The juvenile court removed appellant from her parents for the third and final time. The court sustained the dependency petition, leading to termination of the mother's parental rights in 2011, when appellant was eight years old.

In January 2012, the court found that appellant was not likely to be adopted and that no one was willing to become her legal guardian. The court ordered a permanent plan of foster care with the goal of emancipation. Throughout the dependency proceedings, appellant has been represented by appointed counsel.[4] It appears that she is still under the juvenile court's jurisdiction in extended foster care.[5]

---

children for the second time. The 2006 petition involved allegations of physical abuse. Appellant was returned to her mother in March 2007. In 2008, the court assumed jurisdiction over the children for the third time, but did not remove them from their mother. The 2008 petition alleged neglect and failure to supervise.

[4] Appellant was not represented by her dependency attorney in either the administrative proceedings or this appeal. Nor is the current appeal from any order made by the juvenile court. The appeal is from the denial of administrative mandate by the trial court, sitting in a writs and receivers department.

[5] The California Fostering Connections to Success Act, often referred to as A.B. 12, allows non-minor dependents to remain

4

Cumulatively, appellant spent approximately four years of her life at home. She has otherwise been in the care of various governmental entities. During her long passage through the dependency system, appellant has had more than 20 out-of-home placements—most of them in group homes or temporary shelter care, not with individual foster families.

**2.** ***The Individuals with Disabilities Education Act***

Appellant has special educational needs that bring her within the purview of the federal Individuals with Disabilities Education Act (IDEA or Act), 20 United States Code section 1400 et seq.

"Under the IDEA and state law, children with disabilities have the right to a 'free appropriate public education' (FAPE). (20 U.S.C., § 1400(d); Ed. Code, § 56000.) A FAPE consists of 'special education and related services' that are provided to the child at no charge to the parent or guardian, meet state educational standards, and conform to the child's individualized education program (IEP). (20 U.S.C. §§ 1401(9) & (14)[, ] 1412(a)(4), 1414(d).)" (*Department of Health Care Services v. Office of Administrative Hearings* (2016) 6 Cal.App.5th 120, 129 (*Health Care Services*).)

As we discuss in greater detail below, "a FAPE begins with the development of an [individualized education program], which is a written statement that contains an educational program

---

under the juvenile court's dependency jurisdiction and receive financial assistance until age 21 if they comply with certain statutory requirements. (Assem. Bill No. 12 (2009–2010 Reg. Sess); Assem. Bill No. 212 (2011–2012 Reg. Sess); *In re Shannon M.* (2013) 221 Cal.App.4th 282, 285.)

5

tailored to the unique needs of a child with a disability." (*Health Care Services*, *supra*, 6 Cal.App.5th at p. 130.) Every child's individualized program is developed by the student's individualized education program team, which includes parents, teachers, school district representatives, and service providers. (20 U.S.C. § 1414(d); Ed. Code, §§ 56341, 56341.1, 56341.5.) The individualized program describes the child's needs and academic and functional goals and includes a "statement of special education and related services and supplementary aids and services . . . to be provided to the child, or on behalf of the child . . . ." (20 U.S.C. §§ 1412(a)(4), 1414(d)(1)(A)(IV); Ed. Code, §§ 56032, 56345, subd. (a).)

By law, all "special education and related services" provided under the Act flow through the child's individualized program. Thus, a student may not receive any service under the Act until that service is added to his or her individualized program. (Gov. Code, § 7572, subds. (a), (c) [student must be professionally assessed before service may be added to individualized education program].)

"California law determines which local educational agency . . . is responsible for the provision of a FAPE and preparation of an IEP." (*B.H. v. Manhattan Beach Unified School Dist.* (2019) 35 Cal.App.5th 563, 571 (*B.H.*).)[6] The determination of the

---

[6] "Local educational agency or LEA means a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for a combination of

responsible local agency is usually a function of the child's residence. (*Id.*, at p. 571; Ed. Code, § 57156.4, subd. (a) [SELPAs "shall be responsible for providing appropriate education to individuals with exceptional needs residing in licensed children's institutions and foster family homes located in the geographical area covered by the local plan"].)

## 3. *Appellant's Administrative Complaint*

In June 2020, through her guardian ad litem, appellant filed her operative pleading with the Office of Administrative Hearings (OAH), naming as respondents seven school districts and schools, the Los Angeles County Office of Education, and DCFS. The pleading is entitled "Corrected First Amended Request for Due Process," but for ease of reference, we refer to the document as appellant's administrative complaint. The administrative complaint alleged that appellant first qualified for special education services in 2009, when she was five or six,

---

school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools." (34 C.F.R. § 303.23(a).)

In California, "school districts and county school offices have formed consorti[a] to provide special education services to children residing within their boundaries. The consortium for each region is called a Special Education Local Plan Area," or SELPA. (*B.H.*, *supra*, 35 Cal.App.5th at p. 571.) Each SELPA, which must be of sufficient size and scope to provide for the special education service needs of all children residing within the region boundaries, develops a local plan describing how it will provide special education services. (Ed. Code, § 56195.7.)

based on emotional disturbance and intellectual disability.[7] From that time, she was periodically subject to evaluations under the IDEA, the most recent of which appears to have occurred in connection with her 2020 individualized education program.

Appellant alleged that at various times, she has been diagnosed with post-traumatic stress disorder, oppositional defiant disorder, attention deficit hyperactivity disorder, and bipolar disorder. She also has an extensive history of mental health hospitalizations.

Among other relief, appellant sought a finding that respondents denied her a free appropriate public education and other benefits and services, a finding that respondents interfered with the ability of her educational rights holder to participate in the educational process, and compensation to fund "evaluations and compensatory education in an amount and type according to proof."

**4.** ***Factual Allegations in the Administrative Complaint***

The bulk of appellant's allegations in the administrative complaint deal with her educational history and the severe impediments to that education.

She chronicles a four year odyssey from school to school to other facilities from 2017 through 2020. The allegations begin in

---

[7] It is unclear whether appellant contends that she was first *granted* individualized education program services in 2009 or that she *would have* qualified for such services if she had been properly assessed. It appears the Pasadena Unified School District established an individualized education program for appellant in May 2012, when she was in second grade, but the record does not reveal whether that was her first individualized program.

August 2017, when she was 12 and enrolled in the Antelope Valley Union High School District. A month later, the district, as the local educational agency under the Act, held an individualized program meeting and offered appellant various services, including a behavioral support plan. Over the next several months, she was transferred to a school in the Pasadena Unified School District, went missing, was found, and was returned to Antelope Valley Union High School District. In February 2018, she was removed from her foster home, and DCFS transferred her to a temporary shelter facility where she attended two different schools, for one week each.

In July and August 2018, appellant was enrolled at Central Juvenile Hall High School, operated by the Los Angeles County Office of Education. At age 15, she still could not read and was living in a group home in the Kern High School District—but before an individualized education program could be adopted, she was expelled from the group home. In October 2018, appellant was taken into custody and re-enrolled at Central Juvenile Hall High School. She was then returned to temporary shelter care, and by mid-February 2019, was enrolled at Joan Macy Nonpublic School. Between April and August 2019, appellant shuttled between transitional housing and the Central Juvenile Hall High School.

In 2019, at the request of her dependency attorney, appellant spent three weeks at UCLA Resnick Neuropsychiatric Hospital. In October and November 2019, she was placed in temporary shelter care, absconded, returned to the shelter care, and was placed first within Los Angeles Unified School District (LAUSD), and then within the Compton Unified School District.

On December 23, 2019, appellant was finally placed with a foster family in Los Angeles. Her foster parents were given conflicting information from LAUSD about whether she should enroll in one of two public schools or, instead, a nonpublic school. After enrollment in still another school and a transfer to a residential therapeutic center, a dispute arose over which local educational agency was responsible for educating appellant. The State Department of Education ultimately determined LAUSD was responsible.

As we discuss *post*, the central issue in this case is appellant's claim that for each of these moves, DCFS failed to notify local educational agencies and other entities of her special educational needs, as required by State law. (Gov. Code, §§ 7579, 7579.1; Ed. Code, § 56156.) DCFS does not dispute that it was obligated to provide such notice or that it failed to do so. The issue before us is whether OAH is the proper forum to adjudicate the claims against DCFS.

**5.** ***Proceedings in the Office of Administrative Hearings***

Appellant's operative amended administrative complaint, filed August 31, 2020 (after appellant had turned 17), asserts that respondents denied appellant a free appropriate public education by failing to adhere to school stability requirements, impeding appellant's educational rights holder's opportunity to participate in the IEP process, and depriving appellant of educational benefits and related services.

As to DCFS specifically, appellant alleged that, when she was moved from one school to another to another, DCFS failed to provide the various schools and local educational agencies with the required notice of her special educational needs. She argued that when a change in residential placement results in a change

10

of which local educational agency is charged with responding to a foster child's special needs, DCFS must notify both the child's school of origin and the receiving special education local plan area 10 days prior to placement. Appellant asserted that between 2018 and 2019, as she was transferred among the many schools, DCFS failed in its obligation to timely notify the schools of her special educational needs.

Among other things, the administrative complaint asked the OAH to order respondents, including DCFS, to fund evaluations and compensatory education.

DCFS moved to dismiss the administrative complaint, arguing that it was not a public agency subject to OAH jurisdiction. The OAH granted the motion. It reasoned that "[n]one of the code sections or court rules identified in the amended complaint impose an obligation on DCFS to provide special education and related services to a student, or involved DCFS in any decisions regarding a student's educational program." Specifically, the OAH held that Education Code section 56156, subdivision (a)—which obligates California courts, regional centers for the disabled, and public agencies placing children in licensed children's institutions to report a child eligible for special education to the director of the special education local plan area in which the child is placed—does not obligate the placement entities to participate in educational program decisions sufficient to subject them to OAH jurisdiction. Accordingly, the OAH dismissed DCFS.

## 6. *Trial Court Proceedings*

On December 15, 2020, appellant, through her guardian ad litem, appellant Kathryn Fagerquist, filed a verified petition for writ of mandate under Code of Civil Procedure section 1094.5, in

11

which she sought an order compelling the OAH to set aside its order dismissing DCFS from the due process proceeding. The other respondents remained in the administrative proceedings.[8] Appellant alleged DCFS's failure to adhere to its statutory notice obligations deprived her of a free appropriate public education; that had DCFS met its obligations, she would have received the special education and related services to which she was entitled; and that without DCFS's involvement in the administrative action, she would be deprived of a complete remedy.

The trial court denied the petition and entered judgment in favor of DCFS. The court agreed the OAH lacked jurisdiction over DCFS. First, the court held DCFS is not obligated to comply with the IDEA and California special education law because it is not a "designated local agency" within the meaning of the legislative scheme. It reasoned that DCFS's responsibility is to keep children safe from abuse and neglect. Although it must perform acts that affect a dependent child's education, it would be "unreasonable to expand these duties" to encompass the special education regulatory framework.

Next, the court held DCFS is not a "public agency" that provides "special education and related services" within the meaning of the IDEA and State law. The department's general responsibilities do not qualify as "social work services" under the Education Code, and its obligation to transfer certain information to local educational agencies is a ministerial duty. Accordingly, the court held, the OAH had properly concluded it lacked jurisdiction over DCFS, and any "violation of DCFS's duties with

---

[8] The record does not reveal how or if the administrative hearing process proceeded as to the remaining respondents.

12

respect to a special education foster child is addressed before the juvenile court."

Appellant appealed.

## *DISCUSSION*

On appeal, appellant contends the OAH has jurisdiction over DCFS either because DCFS is a "designated local agency" under Government Code section 7586 or because it is a "public agency" that provides "related services" under Education Code sections 56028.5 and 56501.[9] Accordingly, the trial court erred in denying appellant's administrative mandamus petition and entering judgment in favor of DCFS.

## 1. *Standard of Review*

This is an appeal from the denial of a mandamus petition filed by appellant and the ensuing judgment against her. In California, depending on the nature of mandamus relief sought, a petition is governed by one of two statutes: Code of Civil Procedure section 1085 (ordinary mandamus) or section 1904.5 (administrative mandamus).

Here, the trial court treated the petition as one for administrative mandamus that sought review of a decision of an administrative body, the Office of Administrative Hearings. The parties do not discuss the difference between the two writs, and our standard of review in this case would be the same regardless of the writ's form. "Regardless of the writ involved . . . where the facts are undisputed, the reviewing court faces a question of law. 'On questions of law arising in mandate proceedings, we exercise independent judgment.' " (*Santa Clara Valley Transportation*

---

[9] We set out the statutes and discuss their relevance in the text below.

13

*Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1313; see also *Health Care Services*, *supra*, 6 Cal.App.5th at p. 140.)

The scope of the OAH's jurisdiction is an issue of "statutory interpretation that we must consider de novo." (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the lawmakers' intent. (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321.) To determine intent, we first examine the statutory language and give the words their ordinary meaning. (*Ibid*.) "Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, are to be construed according to such peculiar and appropriate meaning or definition." (Civ. Code, § 13.) If the statutory language is unambiguous, its plain meaning controls; if the statutory language is ambiguous, " ' "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." [Citation.] Ultimately, we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.' " (*Mays*, at p. 321.)

A statute's plain meaning encompasses not only its words but also its grammar and structure. (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1170.) Thus, to determine meaning, we "consider[ ] the statute's language and structure, bearing in mind that our fundamental task in statutory interpretation is to ascertain and effectuate the law's intended purpose. [Citation.] We examine the ordinary meaning of the statutory language, the text of related provisions, and the overarching structure of the

statutory scheme." (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1246, citing *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1391 (conc. opn. of Cuéllar, J.) [" 'The statute's structure and its surrounding provisions can reveal the semantic relationships that give more precise meaning to the specific text being interpreted' "].)

Where statutes possibly conflict, we " 'must, where reasonably possible, harmonize [them], reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject.' [Citation.] Thus, when " 'two codes are to be construed, they "must be regarded as blending into each other and forming a single statute." [Citation.] Accordingly, they "must be read together and so construed as to give effect, when possible, to all the provisions thereof." ' " ' " (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955.)

**2.      *The Statutory Scheme to Deliver a Free Appropriate Public Education***

In California, the Legislature exercises the discretion afforded by the Individuals with Disabilities Education Act (IDEA) by dividing responsibilities between the Superintendent of Public Instruction and the Secretary of Health and Human Services. (Gov. Code, §§ 7570, 7571, 7573.)[10] The

---

[10]      The Superintendent of Public Instruction is an elected constitutional officer. (Cal. Const., art. IX, sec. 2; see *State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 754–755.) The

15

Superintendent fulfills his or her responsibilities through geographic consortia called special education local plan areas. (Ed. Code, §§ 56345, subd. (c), 56120 et seq.)  The Secretary of Health and Human Services, in turn, may "designate a department of the state government to assume [his or her] responsibilities."  (Gov. Code, § 7571.)  The Secretary has delegated FAPE responsibilities to the Department of Health Care Services.  (*Health Care Services*, *supra*, 6 Cal.App.5th at p. 144, fn. 20.)

Government Code section 7571 also requires the Secretary to "designate a single agency in each county to coordinate the service responsibilities described in Section 7572," namely the provision of medical services to, and assessments of, disabled students.  The Secretary has designated California Children's Services (CCS) to perform those functions.  (*Health Care Services*, *supra*, 6 Cal.App.5th at p. 144; Gov. Code, § 7575, subd. (a)(1).)  CCS is administered locally by each county.  (Health & Saf. Code, § 123850.)[11]

Under the statutory scheme, the Superintendent and the Secretary must "develop regulations . . . for the department or designated local agency to implement this act."  (Gov. Code, § 7587.)  The regulations are found in titles 2 and 5 of the California Code of Regulations.  (Cal. Code Regs., tit. 2, § 60000 et seq.; Cal. Code Regs., tit. 5, § 3000 et seq.)

---

Secretary of Health and Human Services is appointed by the Governor.  (Gov. Code, §§ 12800, 12801.)

[11]    We use "CCS" to refer, interchangeably, to both California Children's Services and its local county designee, County of Los Angeles Public Health.

A "FAPE begins with the development of an [individualized education program], which is a written statement that contains an educational program tailored to the unique needs of a child with a disability. (20 U.S.C. §§ 1401(14), 1412(a)(4), 1414(d).)" (*Health Care Services*, *supra*, 6 Cal.App.5th at p. 130; *Honig v. Doe* (1988) 484 U.S. 305, 311 [a FAPE is implemented through the child's IEP].) The IEP includes a "statement of special education and related services and supplementary aids and services . . . to be provided to the child, or on behalf of the child . . . ." (20 U.S.C. §§ 1412(a)(4), 1414(d)(1)(A)(IV); Gov. Code, § 7575; Ed. Code, §§ 56341, 56341.1, 56345, 56345.2; Cal. Code Regs., tit. 2, § 60010, subd. (i).)[12] An individualized program team, consisting of parents, teachers, school district representatives, and service providers participates in the development of the IEP. (20 U.S.C. § 1414(d); Ed. Code, §§ 56341, 56341.1, 56341.5.)

---

[12] An individualized education program must contain: "A statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the pupil, or on behalf of the pupil, and a statement of the program modifications or supports for school personnel that will be provided to enable the pupil to do all of the following: (A) To advance appropriately toward attaining the annual goals. (B) To be involved in and make progress in the general education curriculum . . . and to participate in extracurricular and other nonacademic activities. (C) To be educated and participate with other individuals with exceptional needs and nondisabled pupils in the activities described in this subdivision." (Ed. Code, § 56345, subd. (a)(4).)

The "related services" included in an IEP are "those services that are necessary for a pupil with disability to benefit from his or her special education program . . . ." (Cal. Code Regs., tit. 2, § 60010, subd. (s); Ed. Code, § 56363, subd. (a) [defining related services as necessary "to assist an individual with exceptional needs to benefit from special education"].) A service is "necessary for a pupil with a disability to benefit from . . . special education" if it "assists the pupil with a disability in progressing toward the goals and objectives listed in the IEP in accordance with" Government Code sections 7572 and 7575. (Cal. Code Regs., tit. 2, § 60010, subd. (m).) Such services include transportation, developmental, corrective, and other supportive services. (20 U.S.C. § 1401(26)(A); Ed. Code, § 56363.)

The need for related services is "determined by the" IEP. (Cal. Code Regs., tit. 5, § 3051, subd. (a)(2).) No related service may be provided until the service is added to the student's IEP—and no service may be added to an IEP until the student is professionally assessed. (Gov. Code, § 7572, subds. (a), (c) ["before any action is taken with respect to the provision of related services," the child must be assessed and the service must be added to the individualized education program].) Only once an assessment has occurred and the IEP team has determined a related service is "necessary in order to assist a child to benefit from special education," is the service is added to the pupil's IEP. (Gov. Code, § 7572, subd. (c).)

In accordance with the Legislature's division of responsibility, the Department of Health Care Services' designated local agency, CCS, provides all related services that are medical in nature. (Gov. Code, § 7575, subd. (a)(1).) Medical related services may include, for example, occupational and

physical therapy for a student with cerebral palsy.  (*Health Care Services*, *supra*, 6 Cal.App.5th at p. 132.)  All nonmedical related services are provided by the local education agency.  (Gov. Code, § 7575, subd. (a)(2); Ed. Code, § 56345, subd. (c) ["It is the intent of the Legislature in requiring [IEPs], that the local educational agency is responsible for providing the services delineated in the [IEP]"].)  A nonmedical related service may include, for instance, specialized driver's training for a student unable to walk.  (Ed. Code, § 56363, subd. (b)(8).)

In sum:  Local educational agencies provide a free appropriate public education via a child's IEP.  The IEP directs the provision of educational services, medically necessary related services, and non-medically necessary related services.  Educational services and non-medically necessary related services are typically provided by the local education agency; medically necessary related services are provided by CCS.

**3.**    ***Duty to Notify***

The Legislature has also imposed requirements on entities that, though not directly charged with providing students with a free appropriate public education, can make the process run more smoothly.  Among appellant's claims against the various government respondents is the one directed at DCFS—the department's failure to notify transferee schools and facilities that a child being placed in the service area of those schools or facilities has special educational needs.

Statutes in the Government Code and Education Code require such notice.  Under Government Code section 7579, to "encourage communication between the courts and other public agencies that engage in referring children to, or placing children in, residential facilities" such as foster care (for dependent

19

children) or juvenile detention (for juvenile wards), courts and placement agencies must "notify the administrator of the special education local plan area in which the residential facility is located" before placing a pupil with special needs in that district. (Gov. Code, § 7579, subds. (a), (c).) Under Education Code section 56156, a "public agency that engages in referring children to, or placing children in, licensed children's institutions shall report to the special education administrator of the special education local plan area in which the children's institution is located any referral or admission of a child who is potentially eligible for special education."

DCFS does not dispute that it repeatedly failed to discharge its notification duties as it moved appellant from school to school. The question we must answer is whether these failures give rise to an administrative remedy under the Individuals with Disabilities Education Act through the Office of Administrative Hearings process.

4. ***The OAH Lacks Jurisdiction Over DCFS Because Provision of Notice is not a "Related Service" as Defined by State Law***

When a student or her parent "objects to the adequacy of the education provided, the construction of the IEP, or some related matter, the IDEA provides a procedural recourse: It requires that a State provide '[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.' [20 U.S.C.] § 1415(b)(6)." (*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.* (2007) 550 U.S. 516, 525.) In California, the complaint-resolution procedure is through a due process

20

hearing—an administrative proceeding conducted by the Office of Administrative Hearings.  (Ed. Code, § 56504.5; Gov. Code, § 27727.)  All "state departments, and their designated local agencies" are subject to this process.  (Gov. Code, § 7586, subd. (a).)  So is any "public agency involved in any decisions regarding a pupil."  (Ed. Code, § 56501, subd. (a).)

Appellant argues DCFS is subject to the administrative hearing process because the agency is both a "designated local agency" and a "public agency," under the Government and Education Codes, respectively.  Appellant believes DCFS is a *designated local agency* because the Secretary of Health and Human Services has delegated notice responsibilities to child placement agencies in its implementing regulations.[13]  Appellant believes DCFS is also a *public agency* because it provides "special education or related services to individuals with exceptional needs."  (Ed. Code, § 56028.5 [defining "public agency"].)  In particular, appellant contends DCFS falls within this public agency definition because social work services constitute *related services* within the meaning of this provision.  (Ed. Code, § 56363, subd. (a) [defining related services].)  Based on these designations alone—i.e., DCFS's asserted status as a designated local agency

---

[13]    California Code of Regulations, title 2, section 60510 requires the "court, regional center for the developmentally disabled, or *public agency* other than an educational agency" to notify the special education local plan area director before placing a student with a disability in a residential facility in their district.  (Cal. Code Regs., tit. 2, § 60510, italics added.)  This regulation applies to DCFS, and appellant argues DCFS is therefore a "designated local agency."

and a public agency—appellant contends the OAH had jurisdiction over DCFS in her due process hearing.

Ultimately, we need not—and do not—decide whether DCFS is a designated local agency or a public agency under the statutes. The question before us is narrower. As we discuss below, even if DCFS is, or may be, a designated local agency, a public agency, or both, it is not subject to the administrative hearing process unless it is *also* "involved in any decisions" concerning the proposal or refusal to initiate or change special education and related services for a pupil. (Ed. Code, § 56501; Cal. Code Regs., tit. 2, § 60550, subd. (a).) We conclude that providing adequate notice to transferee schools of an incoming dependent child's special educational needs, although indisputably important and referenced in the legislative scheme, is not a "related service" to which the *administrative hearing process* extends. Accordingly, the OAH lacked jurisdiction over appellant's dispute with DCFS about the department's failure to provide notice.[14]

### 4.1. *OAH Jurisdiction is Limited to Entities Involved in a Disputed Decision Concerning a Pupil*

To determine whether the OAH has jurisdiction over DCFS in this case, we begin by examining the general requirements for establishing jurisdiction in an IDEA proceeding. We then consider whether the DCFS notice requirement at issue here constitutes "a related service" sufficient to subject it to OAH jurisdiction.

---

[14] We do not decide whether there is any other redress that appellant may seek from DCFS outside the OAH process.

The IDEA provides: "Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." (20 U.S.C. § 1415(a).)

In accordance with that mandate, the Legislature has enacted Government Code section 7586, which states: "All state departments, *and their designated local agencies*, shall be governed by the procedural safeguards required in Section 1415 of Title 20 of the United States Code. A due process hearing *arising over a related service* or designated instruction and service shall be filed with the Superintendent of Public Instruction. *Resolution of all issues shall be through the due process hearing process established in Chapter 5 (commencing with Section 56500) of Part 30 of Division 4 of the Education Code.* The decision issued in the due process hearing shall be binding on the department having responsibility for the services in issue as prescribed by this chapter." (Italics added; see Cal. Code Regs., tit. 3, § 3082, subd. (a) ["A parent or public education agency may initiate a hearing pursuant to Education Code sections 56500 through 56507 and 34 C.F.R Sections 300.507 through 300.512 on any of the matters described in Education Code section 56501"].) The statutory requirements of Government Code section 7586 must, therefore, be viewed in the context of the referenced portions of the Education Code.

The relevant chapter of the Education Code begins by laying out the government's due process obligations. Section 56500 defines "public agency." Section 56500.1 provides that the

procedural safeguards under the IDEA must "be established and maintained by each noneducational and educational agency that provides education, related services, or both, to children who are individuals with exceptional needs." (Ed. Code, § 56500.1, subd. (a).) Section 56500.2 describes how such noneducational and educational agencies must handle complaints. Section 56500.3 establishes a procedure for prehearing mediation and dispute resolution. Section 56500.4 requires public agencies to give parents written notice "a reasonable time before the public agency proposes to initiate or change, or refuses to initiate or change, the identification, assessment, or educational placement of the child, or the provision of a free appropriate public education to the child." (Ed. Code, § 56500.4, subd. (a).)

A due process hearing is an administrative proceeding conducted by the OAH. (Ed. Code, § 56504.5; Gov. Code, § 27727.) Beginning with section 56501, the Education Code addresses the initiation of and procedures for such hearings. First, the statute explains who may initiate a due process hearing and under what circumstances. As relevant here, the "due process hearing procedures . . . extend to the parent or guardian, as defined in Section 56028, . . . a pupil who is a ward or dependent of the court . . . , and the public agency involved in any decisions regarding a pupil." (Ed. Code, § 56501, subd. (a).) "The parent or guardian and the public agency involved may initiate the due process hearing procedures prescribed by" the Education Code if there is a proposal or refusal "to initiate or change the identification, assessment, or educational placement of the child or the provision of a free appropriate public education to the child"; or "the parent . . . refuses to consent to an assessment of the child"; or the parent and local educational

24

agency disagree about the "availability of a program appropriate for the child, including the question of financial responsibility . . . ." (Ed. Code, § 56501, subds. (a), (a)(1)–(4).) Second, the statute establishes rights attendant to such a hearing. (Ed. Code, § 56501, subds. (b), (c).)[15]

Appellant's argument that DCFS is subject to OAH due process hearings because it is both a "designated local agency" and a "public agency" focuses on only part of the inquiry. Regardless of whether DCFS is a designated local agency, a public agency, or both, the statutory scheme excludes it from a due process hearing unless it is involved in some disputed decision concerning "identification, assessment, educational placement, or the provision of special education and *related services* to the pupil." (Ed. Code, § 56501, italics added.)[16]

---

[15] Education Code section 56506 establishes additional rights for parents and students.

[16] The meaning of that term is both subtle and confusing because *related services* arises in two different contexts in this case. First, it is used to define *public agency* as providing "special education or related services to individuals with exceptional needs." (Ed. Code, § 56028.5.) Second, to subject a public agency to OAH jurisdiction in a given case, there must be a dispute regarding a *related service* that the agency is (or should be) providing to a particular student. (Ed. Code, § 56501.) So, even if an organization provides related services in the first sense, thereby making it a public agency, the OAH only has jurisdiction if the agency provides related services in the second sense—that is, if one of those related services is at dispute in the case. As we will explain, although appellant argues DCFS provides related services in the former context, this case turns on whether provision of notice is a related service in the latter context.

25

### 4.2. *DCFS is not Subject to OAH Jurisdiction in this Case Because DCFS Statutory Notice is not a "Related Service"*

Related services include "social work services." (20 USC § 1401(26)(A); Ed. Code, § 56363, subd. (a).) Appellant argues that DCFS provides a wide array of "social work services" to dependent children with special needs, making it a public agency for purposes of OAH jurisdiction.

In our view, appellant has misframed the issue. The question before us is not whether DCFS social work services could, in the abstract, constitute *related services* sufficient to deem DCFS a public agency and bring it within the purview of the IDEA and the Office of Administrative Hearings Even if there are circumstances under which OAH can properly assume jurisdiction over DCFS, it is not true that OAH *always* has jurisdiction over DCFS when adjudicating matters concerning dependent children with special educational needs. To compel DCFS to participate in a due process hearing, DCFS must have *also* done or failed to do some act protected by the IDEA. Put in statutory terms, an agency may be haled into the administrative process only if "the public agency [is] involved in any decisions regarding a pupil" under one of four designated circumstances. (Ed. Code, § 56501, subds. (a), (a)(1)–(4).)[17] Thus, here, appellant

___

[17] "The parent or guardian and the public agency involved may initiate the due process hearing procedures prescribed by this chapter under any of the following circumstances: [¶] (1) There is a proposal to initiate or change the identification, assessment, or educational placement of the child or the provision of a free appropriate public education to the child. [¶]

must establish that there is a disagreement concerning "refusal of [the] public agency to initiate or change . . . the provision of . . . related services to the pupil." (Cal. Code Regs., tit. 2, § 60550, subd. (a); see Ed. Code, § 56501, subd. (a)(2); 20 U.S.C. §1414(b)(6)(A) [requiring states to provide an "opportunity for any party to present a complaint" "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child"].)

Appellant contends DCFS did not comply with its notification duties under Government Code section 7579 and California Code of Regulations, title 2, section 60510. Because the claim against DCFS deals with its duty (and failure) to notify—not with DCFS's social work or provision of related services in general—it is the notification responsibilities that must constitute a related service to bring DCFS before the OAH.

---

(2) There is a refusal to initiate or change the identification, assessment, or educational placement of the child or the provision of a free appropriate public education to the child. [¶] (3) The parent or guardian refuses to consent to an assessment of the child. [¶] (4) There is a disagreement between a parent or guardian and a local educational agency regarding the availability of a program appropriate for the child, including the question of financial responsibility, as specified in Section 300.148 of Title 34 of the Code of Federal Regulations." (Ed. Code, § 56501, subd. (a).) Although appellant does not identify which category applies to DCFS's failure to provide notice, we analyze the question as a claim that DCFS "refus[ed] to initiate or change . . . the provision of a free appropriate public education to the child" under subdivision (a)(2).

We conclude the duty to notify is not a related service under IDEA and state law.

DCFS's failure here was not a failure to supply a related service that was or could have been required by appellant's IEP; it was a neglect of its statutory notice duty. California Code of Regulations, title 2, section 60510 implements the notice requirements of Government Code sections 7579 and 7579.1. Under the regulation, within 10 days of placement (or three days for an emergency placement), the "court, regional center for the developmentally disabled, or public agency other than an educational agency" must provide the special education local plan area director with various information including the name of the last school attended, the contact person at the school, the available educational records, including the current individualized education program and the most recent psychological and medical records related to educational planning that are maintained by the agency. (Cal. Code Regs., tit. 2, § 60510, subds. (b), (b)(1)–(3), (7)-(8).) Juvenile courts are required to monitor placement agencies' compliance with these requirements. (Cal. Rules of Court, rule 5.651(e)(1)(B).)

The notice provisions are not the exclusive method of communicating important information to placement schools and facilities. For example, schools themselves have an independent duty to transfer the educational records of students in foster care within four business days. (Ed. Code, § 48853.5, subd. (f)(8)(C).) And the originating school is specifically required to provide the new school with any applicable individualized education program. (Ed. Code, § 49069.5, subd. (e) ["As part of the transfer process . . . the local educational agency shall compile the complete educational record of the pupil, including . . . if

28

applicable, a copy of the pupil's . . . individualized education program adopted pursuant to" the IDEA].)

Rather than informing schools that a student has special needs in the first instance, the notice regulation calls upon agencies, like DCFS, to assemble existing records, not to assess a child's needs, participate in decisions, or provide individualized program services comparable to educational services, medical services, or tangible nonmedical services.

These notices are indisputably important to the child's overall special education needs and programs. But the actual services a student receives flow from and through the pupil's IEP—and the statutes make clear that child welfare agencies like DCFS are not responsible for crafting IEPs or determining what special education and related services should be provided thereunder. (Cal. Code Regs., tit. 5, § 3051, subd. (a)(2); Gov. Code, § 7572, subds. (a), (c).) DCFS social workers are not a regular part of the individualized education program team. (Ed. Code, §§ 56341, 56341.1, 56341.5.) Nor are they educational rights holders. (Ed. Code, § 56028, subd. (c); Welf. & Inst. Code, §§ 361, subd. (a), 366.1, subd. (e); Cal. Rules of Court, rule 5.650.) Local education agencies, not child welfare departments, are responsible for providing all nonmedical related services. (Ed. Code, § 56345, subd. (c); Gov. Code, § 7575, subd. (a)(2); Cal. Code Regs., tit. 5, § 3051.)

Under the supervision of the juvenile court, DCFS is charged with keeping Los Angeles children safe from abuse and neglect. Its social workers often rely on information from other government agencies, including educational agencies, to do so. Such reports help DCFS's social workers do their jobs—but they do not transform teachers into social workers. By the same

token, DCFS is required by law to send records of dependent children's special needs to other government agencies to help *those* agencies do *their* job: assuring California students are afforded a free appropriate public education.  No doubt, in some instances, such as this one, DCFS may be vital to the special education process under state and federal law, but its role does not transform DCFS workers into educators, medical providers, or other service providers under the Act.

We conclude that the statutory duty to notify is not a related service as that term is used in the IDEA and California law.  Because appellant cannot establish that DCFS refused "to initiate or change . . . the provision of . . . related services to the pupil," the OAH properly dismissed DCFS from the due process hearing.  (Cal. Code Regs., tit. 2, § 60550, subd. (a).)

### *DISPOSITION*

The judgment is affirmed.  In the interest of justice, each party shall bear its own costs on appeal.


RUBIN, P. J.

WE CONCUR:



BAKER, J.



KIM J.


30